UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
BAUSCH & LOMB INCORPORATED,

                Plaintiff,        09-CV-6041

     v.                   **DECISION AND ORDER**

FAEZEH MONA SARFARAZI, M.D.

                Defendant,
_____

## **INTRODUCTION**

Plaintiff, Bausch & Lomb Incorporated ("Plaintiff" or "B&L"), brings this action seeking, *inter alia*, a declaratory judgment that it did not breach a license agreement with the Defendant, Faezeh Mona Sarfarazi, M.D. ("Defendant" or "Sarfarazi"), for the license of intellectual property owned by Sarfarazi. (Docket No. 1.) Sarfarazi answered the complaint and asserted four counterclaims for breach of contract based on B&L's alleged failure to use commercially reasonable efforts to develop an intraocular lens with the use of Sarfarazi's intellectual property, which was the purpose of the license agreement; B&L's breach of its obligations after the termination of the agreement; unfair competition and/or misappropriation of ideas; and for the correction of a patent application filed by B&L to list Sarfarazi as the inventor. (Docket No. 12.) In her Response to Plaintiff's First Set of Interrogatories, Sarfarazi alleged that "[she] has suffered consequential damages based upon her lens' diminution in value as a result of B&L's conduct. With the flawed clinical trials, her

intraocular lens has suffered damage to its reputation in the marketplace." (Docket No. 78-2 at 15.)

B&L now moves for partial summary judgment to dismiss Sarfarazi's claims for reputational harm as speculative and to dismiss Sarfarazi's claim for breach of contract based on B&L's alleged failure to use commercially reasonable efforts to develop the product. Def. Mem. of Law at 1-2, Docket No. 78-19. The motion is unopposed. For the reasons discussed herein, the Court grants in part and denies in part Plaintiff's motion for partial summary judgment. Defendant's damages claim for reputational harm is dismissed, but the motion is denied with respect to Defendant's claim for breach of contract.

## BACKGROUND

The following facts are taken from Plaintiff's submission pursuant to Local Rule 56 (a)(1) and the accompanying exhibits. Defendant has not responded to the instant motion or Plaintiff's Local Rule 56 Statement of Facts. Therefore, the facts contained in the Defendant's Local Rule 56 Statement of Facts are deemed admitted. See Local Rule of Civ. P. 56 (a)(2). However, the Court has reviewed the entire record to determine whether there are any disputed issues of fact.

On July 18, 2003, B&L and Sarfarazi entered into a license agreement ("the Agreement") for the development of an intraocular lens, invented by Sarfarazi, for the treatment of the eye condition

presbyopia. Pl. Statement of Facts at ¶1; Foos Aff. at ¶6. Pursuant to the Agreement, Sarfarazi received an initial payment of $2.5 million upon execution of the Agreement and additional payments as B&L hit certain milestones in the development of the lens. In total, Sarfarazi received $9.5 million under the Agreement. Pl. Statement of Facts at ¶¶ 10-11, 24.

The Agreement required B&L to "use reasonable commercial efforts to achieve the development milestones" set forth in the Agreement and to develop the licensed product for sale. License Agreement §7(a), Docket No. 78-7 at 11. The Agreement also required B&L to incur all costs related to the development of the lens. Id. The Agreement states that "B&L may, from time to time, consult or confer with [Sarfarazi] with regard to development of Licensed Product...but B&L shall have complete control and authority over the development of Licensed Products." Id. B&L was required to provide monthly reports until the "first commercial sale" and to meet with Sarfarazi quarterly during the first three years of development and later every six months. License Agreement §7(d), Docket No. 78-7 at 11-12. B&L also agreed to provide Sarfarazi with certain reports concerning the development of the product, including clinical trials. Id.

B&L began its development of the lens in 2003, at a time when no other similar lens existed on the market. Foos Aff. ¶11. It was unclear whether the lens could be developed safely and effectively

or whether B&L could gain the necessary regulatory approvals. Id. Nevertheless, B&L, *inter alia*, developed a unique manufacturing process for the lens, conducted clinical trials, developed surgical techniques for the lens and implanted the lens in 76 patients. Id. at ¶12. However, after three years of development, B&L concluded that the lens provided limited improvement in patients with presbyopia and that it carried with it certain safety concerns, including infection. Id. at ¶ 25-29. B&L sent Sarfarazi periodic updates relating to the development of the lens and the clinical trials, and Sarfarazi visited the clinical trial sites in Mexico and India. Foos Aff. at ¶¶ 15-18; Sarfarazi Dep. at pg. 222. However, on several occasions, B&L failed to timely provide Sarfarazi with monthly reports. Foos Aff. Exhibit 4.

Then, on February 7, 2007, B&L sent a termination letter to Sarfarazi, terminating the Agreement pursuant to Section 13(b), which permitted B&L to terminate the Agreement upon 60 days notice if it made a "commercially reasonable determination that there ha[d] been a material change in...the safety and efficacy goals" for the lens. License Agreement §13(b), Docket No. 78-7 at 17. The Agreement then provided Sarfarazi 60 days to discuss the termination with B&L, but B&L retained the right to terminate if its decision regarding the efficacy and/or safety of the product had not changed during the 60 days. The Agreement provides that if Sarfarazi disputed B&L's decision to terminate the Agreement, her

sole remedy was to commence an arbitration proceeding within 90 days after the 60 day notice period. License Agreement §13(b), Docket No. 78-7 at 17. The 90 day period was extended through February 28, 2008, however, Sarfarazi did not commence an arbitration proceeding. Pl. Statement of Facts at ¶22.

As stated, Sarfarazi was updated on a periodic basis of the status of B&L's development efforts and she visited two of the clinical trial sites. Sarfarazi did not inform B&L that she believed they had breached the Agreement by failing to use commercially reasonable efforts to develop the lens prior to B&L's termination of the Agreement. The Agreement provides that Sarfarazi could terminate the Agreement only if she notified B&L of a material breach and afforded it 60 days to cure the breach. License Agreement §13(a), Docket No. 78-7 at 16. However, the record indicates that Sarfarazi did not always receive the information to which she was entitled on a timely basis and she alleges that she did not receive reports regarding several of the clinical trials until after termination. Answer and Counterclaims at ¶¶ 89-98, Docket No 12.

Following termination, Sarfarazi attempted to market the lens to four other pharmaceutical companies, but ultimately, she decided not to proceed with any of the companies. Sarfarazi Dep. at pg. 596-606. She states that she is "not ready" to proceed with any company because of this pending litigation. Id. at pg. 606.

**DISCUSSION**

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a). If, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party, a grant of summary judgment is appropriate. See Scott v. Harris, 550 U.S. 372, 379 (2007) (citing Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-587.). An unopposed motion for summary judgment may be granted if the Court determines that the moving party met its burden of demonstrating that there are no material issues of fact and that it is entitled to judgment as a matter of law. See Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244-246 (2d Cir. 2004.)

A. Reputational Harm

B&L moves to dismiss Sarfarazi's damages claim for harm to the reputation of the product based on B&L's termination of the Agreement contending that it is too speculative. This Court agrees. Accordingly, B&L's motion to dismiss Sarfarazi's claim for reputational harm is granted.

In New York, a claim for reputational harm is only cognizable where the harm is "capable of proof with reasonable certainty" and

is "not merely speculative, possible or imaginary." Toltec Fabrics, Inc. v. August Inc., 29 F.3d 778, 780-782 (2d Cir. 1994)(quoting Kenford Co. v. County of Erie, 67 N.Y.2d 257, 261 (1986)). Further, a plaintiff must present proof of the amount of the loss and establish that the loss was causally related to the breach of contract. Id.

Here, B&L contends that Sarfarazi's alleged reputational harm is too speculative because she has not established that she actually lost any particular business opportunity because of its termination of the Agreement. Further, they contend, the evidence is clear that Sarfarazi rejected any business opportunity that may have been available to her following the termination.

The undisputed facts establish that following B&L's termination of the Agreement, Sarfarazi was in contact with several companies who may have agreed to develop the lens. However, Sarfarazi did not proceed with any of these companies and she testified that she was "not ready" to further market her lens. On these facts, the Court concludes that any business opportunity that Sarfarazi may have lost due to B&L's termination of the Agreement is too speculative for her to succeed on a claim for reputational harm. There is simply no proof in the record that any of the companies with whom she spoke following B&L's termination decided not to proceed with her based on the termination. To the contrary, the facts indicate that it was Sarfarazi herself who decided to

forgo any business opportunity she may have had. Accordingly, the Court grants B&L's motion to dismiss Sarfarazi's claim for reputational harm.

### B. The Arbitration Clause

B&L contends that Sarfarazi's breach of contract claim relating to their alleged failure to use commercially reasonable efforts to develop the lens is required to be arbitrated pursuant to Section 13(b) of the Agreement. Section 13(b) permitted B&L to terminate the Agreement upon 60 days notice if it made a "commercially reasonable determination that there ha[d] been a material change in... the safety and efficacy goals" for the lens. License Agreement §13(b), Docket No. 78-7 at 17. The Agreement then provided Sarfarazi 60 days to discuss the termination with B&L, but B&L retained the right to terminate if its decision regarding the efficacy and/or safety of the product had not changed during the 60 days. The Agreement provides that if Sarfarazi *disputed B&L's decision to terminate the Agreement*, her sole remedy was to commence an arbitration proceeding within 90 days after the 60 days notice period. License Agreement §13(b), Docket No. 78-7 at 17 (emphasis added).

To determine whether a contract dispute is required to be arbitrated, Courts distinguish between broad arbitration clauses, which purport to cover any and all disputes, and narrow arbitration clauses, which limit the disputes that are required to be

arbitrated. See McDonnell Douglas Finance Corp. v. Pennsylvania Power & Light Co., 858 F.2d 825, 831-833 (2d Cir. 1988). Here, B&L acknowledges that the arbitration clause is narrow in that it limits the disputes that are required to be arbitrated to those related to its termination of the Agreement. Pl. Mem. of Law at 21. However, they contend that Sarfarazi's claim for breach of contract is "inextricably tied to" or "wholly derivative of" her claim that they improperly terminated the Agreement. Pl. Mem. of Law at 21 (citing McAllister Bros., Inc. v. A&S Transp. Co., 621 F.2d 519, 523 2d Cir. 1980). This Court disagrees.

Sarfarazi alleges that B&L mismanaged clinical trials which resulted in B&L failing to meet the "anticipated safety and efficacy goals" under the Agreement. She alleges specific errors or lapses in protocols during the trials that led to the alleged mismanagement and that the reports she received regarding the clinical trials, some of which were received after B&L terminated the Agreement, establish that the proper protocols were not followed. See Answer and Counterclaims at ¶¶ 77-98. While the Court can infer from Sarfarazi's Answer and Counterclaims that she ultimately wanted the project to continue and that she believed that it would have continued had these alleged errors not occurred, her claim that B&L failed to use commercially reasonable efforts to develop the product is wholly separate from B&L's purported commercially reasonable determination that the Agreement should be

terminated because the safety and efficacy goals could not be met under Section 13(b). This is underscored by the fact that the Agreement contains two separate provisions dealing with B&L's obligations to use commercially reasonable efforts to develop the product under Section 7(a) and to make a commercially reasonable determination that termination was proper under Section 13(b). Should the parties have desired to arbitrate the issue of whether B&L used commercially reasonable efforts to develop the product, they could have done so. However, the plain language of the contract limits the applicability of the arbitration clause to a dispute regarding termination. <u>See</u> License Agreement §13(b) ("If B&L does not alter its determination [regarding termination]...and Licensor disputes that B&L has made a commercially reasonable determination [regarding termination]..., then Licensor, as her sole remedy therefor, may commence an arbitration proceeding..."); Docket No. 78-7 at 16.

The Court finds that Sarfarazi's claim for breach of contract is not related to B&L's decision to terminate the contract. It is a claim that they breached the terms of the contract prior to termination. While Sarfarazi's counterclaim may suggest that she wished B&L would have continued to develop the lens, the claim does not dispute whether they made a commercially reasonable decision to terminate the Agreement; rather, it disputes whether they used commercially reasonable efforts to develop the product prior to

termination. While there is a federal presumption in favor of arbitration, "it is equally clear that federal policy alone cannot be enough to extend the application of an arbitration clause far beyond its intended scope." McDonnell, 858 F.2d at 831 (internal quotations omitted). Accordingly, the Court finds that Sarfarazi's claim does not fall within the limited scope of the arbitration clause. Therefore, B&L's motion to dismiss this claim is denied.

C.  Notice and Opportunity to Cure

B&L contends that Sarfarazi's claim for breach of the Agreement based on B&L's alleged failure to use commercially reasonable efforts to develop the lens should also be dismissed because Sarfarazi failed to give B&L notice of the alleged breach and an opportunity to cure. Sarfarazi's claim rests on her allegation that she was not adequately informed of B&L's progress as required by Section 7(d) of the Agreement and therefore, she could not make the determination of whether commercially reasonable efforts were made to give B&L notice of the breach. The Court finds that B&L has not established that it is entitled to judgment as a matter of law on this claim. While the record reveals that Sarfarazi was provided with information on the development of the lens and she attended several of the clinical trials, the record also indicates that on several occasions B&L failed to timely inform Sarfarazi of its progress. See Foos Aff. Exhibit 4, Docket No. 78-10. Further, Sarfarazi alleges that some of the information

regarding certain clinical trials was not provided to her until after B&L terminated the Agreement. Answer and Counterclaims at ¶¶ 89, 94, 96. Although Sarfarazi has not responded to the instant motion, the Court finds that there are questions of fact that remain as to whether Sarfarazi was adequately informed such that she could have given B&L notice of the alleged breach and an opportunity to cure. Accordingly, B&L's motion to dismiss this claim is denied.

## **CONCLUSION**

For the reasons discussed herein, the Court grants in part and denies in part Plaintiff's motion for partial summary judgment. Defendant's damages claim for reputational harm is dismissed, but the motion is denied in all other respects.

**ALL OF THE ABOVE IS SO ORDERED.**

                                                  S/ MICHAEL A. TELESCA
                                                  HON. MICHAEL A. TELESCA
                                                  United States District Judge

Dated:    Rochester, New York
            July 31, 2013